# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

JULIAN J. BROWN, DOC #424939,  
SID #3986965,

Plaintiff,

v.                           Civil Action No. JKB-17-1212

WEXFORD HEALTH SOURCES INC.,  
CORRECT RX PHARMACY SERVICES,  
DAYENA M. CORCORAN,  
RICHARD D. DOVEY,  
DOLPH BRUCKMAN,  
CONTAH NIMLEY,  
LORI SLAVICK,

Defendants.

\*\*\*

## MEMORANDUM OPINION

Self-represented Plaintiff Julian J. Brown brings this civil action pursuant to 42 U.S.C. § 1983 against Defendants, Wexford Health Sources, Inc. ("Wexford"), Correct Rx Pharmacy Services ("Correct Rx"), Dayena M. Corcoran, Richard D. Dovey, Dolph Druckman, M.D., Contah Nimely, M.D.,[1] and Lori Slavick, P.A.[2] ECF No. 1. Through the Complaint filed on May 2, 2017, and supplemented on July 12, 2017, Brown alleges that when he was housed at the Maryland Correctional Training Center ("MCTC") in Hagerstown, Maryland, Defendants violated his Eighth Amendment right by failing to provide adequate medical care.[3] *Id.* at p. 5; ECF No. 4, p. 5. Against MCTC Warden Richard D. Dovey and Commissioner of Correction

---

[1] The Clerk shall be directed to amend the docket to reflect the correct spelling of Defendant Dolph Burckman's name as Dolph Druckman and Defendant Contah Nimley's name as Contah Nimely.

[2] Brown initially named as additional Defendants the Maryland Department of Public Safety and Correctional Services (DPSCS) and the Maryland Division of Corrections. ECF No. 1. Claims against those Defendants were dismissed on September 18, 2017. ECF No. 6.

[3] As Correct Rx Pharmacy Services was never served in this case, and Brown's supplemental Complaint fails to allege any claims against it, Correct Rx shall be dismissed from the suit.

Dayena M. Corcoran (collectively, "Correctional Defendants"), Brown seeks injunctive relief and compensatory relief of one million dollars. ECF No. 4, p. 5. Against Wexford, Druckman, Nimely, and Slavick (collectively, "Medical Defendants"), Brown seeks injunctive relief and compensatory relief of $4.5 million. *Id.*

On December 18, 2017, Correctional Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 17. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court informed Brown that the failure to file a response in opposition to the Motion could result in dismissal of the Complaint. ECF No. 18. Brown did not respond. On February 5, 2018, Medical Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 23. On February 28, 2018, Brown filed a response in opposition (ECF No. 25), to which Medical Defendants replied on March 12, 2018 (ECF No. 26). For the reasons stated below, the Correctional Defendants' Motion shall be granted and the Medical Defendants' Motion shall be denied.

## Background

Brown, who was previously incarcerated at MCTC, has a medical history significant for hyperlipidemia,[4] esophageal reflux, Hepatitis C, polyneuropathy in diabetes,[5] hypertension, post-kidney transplant, diabetes mellitus with renal manifestations,[6] peripheral artery disease, and

---

[4] Hyperlipidemia, or high cholesterol, is a term that covers several disorders that result in extra fats, or lipids, in the blood. *See* https://www.webmd.com/cholesterol-management/hyperlipidemia-overview#1 (last visited September 10, 2018).

[5] Diabetic neuropathy is a type of nerve damage that can occur in those with diabetes. *See* https://www.mayoclinic.org/diseases-conditions/diabetic-neuropathy/symptoms-causes/syc-20371580 (last visited September 10, 2018).

[6] Diabetes mellitus (or diabetes) is a chronic, lifelong condition that affects the body's ability to use the energy found in food. *See* https://www.webmd.com/diabetes/guide/types-of-diabetes-mellitus#1 (last visited September 10, 2018). Diabetes can damage the kidneys and cause them to fail. *See* http://www.diabetes.org/living-with-diabetes/complications/kidney-disease-nephropathy.html (last visited September 10, 2018).

blindness in one eye. *See* ECF No. 23-7.[7] Defendants provide verified business records that include Brown's medical records along with Druckman's declaration. ECF Nos. 23-4; 23-5; 23-6; 23-7; 23-8 (medical records); 23-9 (Druckman Decl.). Brown's claims against all Defendants are included below.

Brown states that on June 16, 2015, Slavick failed to follow the instructions given by Brown's previous prison medical provider, Dr. Sadek Ali, regarding physical therapy and insulin dosage. ECF No. 4, p. 2; *see also* ECF No. 23-5, p. 1. According to Brown, the dosage adjustment produced dangerous increases in his glucose levels, threatening the maintenance of his transplanted kidney. *Id.* Brown further states that on June 22, 2015, Slavick made another adjustment to the insulin dosage by adding a 25 unit Levemir p.m. dose to Brown's treatment plan, despite being informed by Brown that p.m. doses of long term insulin had been shown to produce hypoglycemic reactions in his system and, thus, had been removed from his treatment plan in 2013. *Id.* Brown alleges that hypoglycemic reactions began within 48 hours thereafter and worsened on July 2, 2015, causing him to go into insulin shock on July 8, 2015. *Id.* Brown states that on August 12, 2016, Slavick discontinued his pre-meal doses of Humalog insulin, which had been implemented by the Endocrinology Team at the University of Maryland Medical Center ("UMMC"). *Id.*

Brown advances similar claims as to Nimely. According to Brown, on July 13, 2015, Nimely refused to continue his physical therapy, despite Dr. Ali's instructions. *Id.* at p. 3. Brown also states that on July 20, 2015, Nimely reduced his pre-meal insulin dose by 40% and discontinued the sliding scale adjustments used to correct elevated glucose levels from his treatment plan. *Id.* On July 29, 2015, the results of those adjustments revealed dangerously high

---

[7] All citations to filings refer to the pagination assigned by the Court's electronic docketing system.

glucose levels, some in excess of 600 mg/dl, bordering on diabetic coma ranges and threatening the maintenance of Brown's transplanted kidney. Brown alleges that Nimely made no attempt to regain control of his diabetes. *Id.* Then, on November 29, 2016, Nimely added 5 units of long term insulin to Brown's p.m. pre-meal dose despite the recorded proof that pm doses of long term insulin had repeatedly caused him to experience severe hypoglycemic reactions. *Id.* Brown states that on December 7, 2016, he was admitted to the prison infirmary in an effort to stop the hypoglycemic reactions caused by Nimely's dosage adjustment. *Id.*

Brown alleges that on July 2, 2016, Druckman disregarded Brown's discharge instructions, which had been issued by UMMC. *Id.* Brown states that Druckman adjusted his anti-refection/immunosuppression medication, failed to get requested labs drawn, failed to fulfill the prescribed antibiotic regimen, and failed to schedule his follow up with the podiatrist, vascular surgeon, and infectious disease clinic. *Id.* Brown states that on August 11, 2016,

> Dr. Druckman, disregarding the instructions given to him on multiple occasions, attempted to remove a subclavian Hickman catheter from plaintiff's pectoral region. As this catheter had been surgically implanted, at the UMMC, it required surgical removal. Being unfamiliar with this particular type of device and thinking it was a typical PICC line, Dr. Druckman tried to remove the subclavian Hickman catheter with a pair of scissors, disregarding the instructions to return plaintiff to UMMC for central line removal by IR (lnterventional Radiology) on or around 8/9/2016.
>
> After about an hour of cutting into plaintiff's chest with a pair of scissors and no anesthesia, the Dr. became frustrated and began tugging on the subclavian Hickman catheter. When plaintiff suggested that the Dr. call the phone number, listed on the discharge instructions, the Dr. became angry and told the plaintiff to let him be the Dr. and for the plaintiff to be the patient. Shortly thereafter the Dr. gave up and ended the torture. Having assumed he could perform the procedure himself, the defendant prematurely arranged for another inmate to occupy the plaintiff's bed space, making it necessary to discharge plaintiff from the infirmary. At this point, Dr. Druckman contacted Meritus Medical Center and gave them false information, stating that an inmate from a local prison was being sent to them, for removal of a right-sided subclavian Hickman catheter, as opposed to traveling all the way to Georgetown. He, intentionally, failed to inform the Medical Center of the device's place and time of implantation, as well

4

as, his futile attempt to remove the catheter himself. He then had plaintiff returned, to MCTC, following the Emergency Room surgery, in violation of DPSCS policy . . . .

*Id.* (internal citations omitted).

Brown alleges that Wexford, as the employer of Slavick, Nimely, and Druckman, is responsible for its subordinates' failure to provide adequate medical care. Brown states that Wexford continues to allow lapses in treatment to occur, in violation of his Eighth Amendment Rights.[8]

With regard to the Correctional Defendants, Brown alleges that Warden Dovey failed to identify Wexford's failures to provide adequate medical care, and that Commissioner Corcoran improperly dismissed his requests for administrative remedy, thus allowing Brown to continue without adequate medical care. *Id.* at p. 4.

## Legal Standards

### I. Motion to Dismiss

In reviewing a complaint in light of a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[8] On September 7, 2017, the Clerk received correspondence from Brown indicating that he had been released from custody.

5

Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), unsupported legal conclusions, *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), and conclusional factual allegations devoid of any reference to actual events, do not suffice, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## II. Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The court reviewing the motion must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for

trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

**Analysis**

In their Motion, Correctional Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(6), or summary judgment under Rule 56, arguing that they are entitled to dismissal because they did not personally participate in the alleged wrongdoing, Brown failed to exhaust his administrative remedies, there was no denial of medical care by Correctional Defendants, and they are entitled to qualified immunity. ECF No. 17-1. Medical Defendants also seek dismissal or, in the alternative, summary judgment. In support, they argue that Wexford cannot be liable because respondeat superior does not apply here, Brown has failed to show that Wexford was deliberately indifferent to his serious medical needs, Brown's allegations of medical negligence are not judicially actionable, and Medical Defendants are otherwise entitled to judgment as a matter of law. ECF No. 23-3.

**I.     Correctional Defendants**

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Other than naming the Correctional Defendants in the caption of the Complaint, Brown states only that he disagrees with their adjudication of his ARPs. The Correctional Defendants' decisions do not amount to a constitutional violation. Simply stated, Brown's allegations fail to state a claim against the Correctional Defendants.

Alternatively, Brown has failed to plead sufficient facts from which to discern the Correctional Defendants' supervisory liability for his claim. The doctrine of *respondeat superior*

does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). As such, to establish supervisory liability under § 1983, a plaintiff must show that (1) the supervisor had actual or constructive knowledge his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Here, Brown has failed to demonstrate sufficient facts showing supervisory indifference to, or tacit authorization of, any misconduct by the Correctional Defendants' subordinates. Thus, dismissal of the claims against the Correctional Defendants is proper under this theory as well.

## II. Medical Defendants

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Moreover, in a case involving a claim of deliberate indifference to a medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178 (citations omitted). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844. Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citation and internal quotation marks omitted).

Here, Brown has adequately alleged that the Medical Defendants were deliberately

9

indifferent to his medical needs by failing to adhere to the instructions of his former physician, Dr. Ali, and the UMMC medical staff. Brown claims that Druckman was deliberately indifferent when he disregarded the instructions of UMMC staff by attempting to remove, with scissors and without anesthesia, a subclavian Hickman catheter from Brown's pectoral region. ECF Nos. 1 & 4. In support, Brown presents discharge instructions from UMMC, indicating that he "needs appointment for central line removal by IR (interventional radiology) on or around 8/09/16." He also includes his discharge document from the Meritus Medical Center in Hagerstown, Maryland, indicating that "[g]eneral surgery" was required to remove the catheter. ECF No. 1-17. Meanwhile, Druckman maintains that "[r]emoving a Hickman catheter is often a nursing activity and being removed by a physician is certainly within the standard of care." ECF No. 23-9 at ¶ 5. Druckman states that Hickman catheters can usually be removed without anesthesia, but adds that surgical removal is sometimes necessary. *Id.* This is a genuine dispute of material fact precluding summary judgment in favor of Medical Defendants.

Moreover, Medical Defendants maintain that it was an appropriate decision not to place Brown in physical therapy because there was no medical indication for physical therapy, and that Brown's numerous hypoglycemic and hyperglycemic episodes resulted from his repeated non-compliance with diet and regular meals against medical advice. *Id.* at ¶¶ 6 & 12. This is a genuine dispute of material fact precluding summary judgment in their favor, as Brown's claims are that Slavick and Nimely discontinued physical therapy despite Dr. Ali's instructions, and that they modified Brown's insulin dosage despite having knowledge that making such modifications previously resulted in severe hypoglycemic reactions. ECF Nos. 1 & 4.

In light of the foregoing, Medical Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, shall be denied.

**Conclusion**

The Court determines that the Correctional Defendants are entitled to dismissal. The Medical Defendants' Motion to Dismiss or for Summary Judgment shall be denied. If Brown desires counsel to represent him in this matter, he should secure one by October 12, 2018. A separate Order follows.

Dated this 12th day of September, 2018.

FOR THE COURT:

_____/s/_____
James K. Bredar
Chief Judge